ECONOMY CLEANERS, INC., a corporation of the State of Delaware,

*vs.*

PERCY WARREN GREEN, Attorney General of the State of Delaware, JAMES R. MORFORD, City Solicitor of the City of Wilmington, and ABRAHAM SAYER, JACOB PILDISH, DAVID ZUTZ, GERRISH GASSAWAY and EDWIN A. SCOTTON, members of the Trade Board of Cleaning, Pressing and Dyeing Trade.

*New Castle, Feb. 5, 1936.*

*Albert L. Simon,* for complainant.

*Percy Warren Green,* Attorney General, *in propria persona,* and for the Trade Board for the Cleaning, Dyeing and Pressing Trade.

THE CHANCELLOR: The bill assails the act as unconstitutional in that it (1) delegates to the Trade Board legislative powers, (2) authorizes the deprivation of the complainant's property without due process of law, and (3) is an arbitrary and capricious exercise by the State of its police power.

On the presentation of the application for an *ex parte* restraining order, the Attorney General raised the objection that inasmuch as the bill seeks to interfere with the prosecution of criminal actions, this court is entirely without jurisdiction to entertain the suit, the complainant having an adequate remedy at law by way of defense to the criminal action already instituted and to any other such actions that may be instituted. Therefore, he urged and has since insisted by brief, that no matter what the facts and law may be, the restraining order ought not issue.

The contention in the broad sense in which it is put by the Attorney General is not tenable. It is quite true that as a general rule courts of equity have no jurisdiction to interfere by injunction with the enforcement of the criminal laws of the State by its duly constituted officers. Not only does the ordinary adequacy of the legal remedy which is afforded to defendants in criminal cases forbid interference by equity courts in criminal prosecutions, but considerations of public policy are evident upon a moment's reflection which condemn any attempt by equity to draw unto itself the consideration of criminal matters away from the tribunals which the constitution has created for their enforcement and which are peculiarly adapted for their adjudication and final determination. This general proposition is too well settled to need citation of authority for its support. There is an exception to it when criminal proceedings are instituted by a party to a suit already pending in equity to try the same right that is there in issue. *In re Sawyer,* 124 *U. S.* 200, 8 *S. Ct.* 482, 31 *L. Ed.* 402; *Davis & Farnum Mfg. Co. v. Los Angeles,* 189 *U. S.* 207, 23 *S. Ct.* 498, 47 *L. Ed.* 778. The instant suit presents the reverse of that situation.

Equity in administering its injunctive relief is concerned only with property and the protection of rights therein. When, therefore, rights of this character are threatened with injury by the enforcement of an invalid criminal statute, and the threatened injury, if accomplished,

is irreparable and the rights are incapable of protection except by the extraordinary remedy which a court of equity alone can afford, relief will be afforded notwithstanding the court may be called upon in the course of exercising its jurisdiction to examine the question of whether the statute is valid and the complainant therefore guilty of a criminal offense. This proposition has been repeatedly stated and approved by the Supreme Court of the United States. Its application goes so far as to warrant in proper cases the issuance of an injunction against criminal prosecution under the allegedly unconstitutional statute. *Dobbins v. Los Angeles,* 195 *U. S.* 223, 25 *S. Ct.* 18, 49 *L. Ed.* 169; *Truax v. Raich,* 239 *U. S.* 33, 36 *S. Ct.* 7, 60 *L. Ed.* 131, *L. R. A.* 19116*D,* 545, *Ann. Cas.* 1917*B,* 283; *Terrace v. Thompson,* 263 *U. S.* 197, 44 *S. Ct.* 15, 68 *L. Ed.* 255; *Packard v. Banton,* 264 *U. S.* 140, 44 *S. Ct.* 257, 68 *L. Ed.* 596; *Tyson & Brother United Theatre Ticket Offices v. Banton,* 273 *U. S.* 418, 47 *S. Ct.* 426, 71 *L. Ed.* 718, 58 *A. L. R.* 1236. Many cases in the state courts are cited to like effect in 32 *C. J. p.* 282, *note* 14.

But in order to warrant the interference by a court of equity with proceedings instituted by the officers charged with the duty of enforcing the criminal statutes, the injury to property rights which the enforcement of an invalid criminal statute will perpetrate must be direct and irreparable. In the following cases it was said that the possibility of the frequency or multiplicity of indictments in itself supplied no ground for interference by a court of equity. *Fitts v. McGhee,* 172 *U. S.* 516, 532, 19 *S. Ct.* 269, 43 *L. Ed.* 535; *Kelly & Co. v. Conner,* 122 *Tenn.* 339, 396, 123 *S. W.* 622, 25 *L. R. A.* (*N. S.*) 201. But in *Baldwin v. City of Atlanta,* 147 *Ga.* 28, 92 *S. E.* 630; *L. Maxcy, Inc., v. Mayo,* 103 *Fla.* 552, 139 *So.* 121; and in *Martin, et al., v. Baldy, et al.,* 249 *Pa.* 253, 94 *A.* 1091, it appears that it was the prospect of repeated prosecutions and therefore a multitude of criminal suits, that supplied the justification for interference by the court. So also in *Tyson & Brother v.*

*Banton, supra,* the jurisdiction rested on the threats of repeated prosecutions for reselling theatre tickets by a licensee at more than a minimum profit, conjoined with the fact that the penalties were severe and the license to resell might be revoked. Likewise in *Ex parte Young,* 209 *U. S.* 123, 28 *S. Ct.* 441, 52 *L. Ed.* 714, 13 *L. R. A.* (*N.S.*) 932, 14 *Ann. Cas.* 764, *Cline v. Frink Dairy Co.,* 274 *U. S.* 445, 47 *S. Ct.* 681, 71 *L. Ed.* 1146, an important if not the controlling consideration on which the jurisdiction was predicted was the great injury which would have been done to the complainant's property rights if he were harrassed by a frequency of prosecution. The test deducible from the authorities appears to be whether great and irreparable damage would be visited upon the complainant's property or rights to its lawful enjoyment through the attempted enforcement of an invalid criminal statute by prosecutions thereunder. A multiplicity of the prosecutions may be the means not only of creating but accentuating as well as enlarging the injury. But so far from indispensable is the mere matter of multiplicity of prosecutions upon the question of the court's jurisdiction, that in *Terrace v. Thompson,* 263 *U. S.* 197, 44 *S. Ct.* 15, 68 *L. Ed.* 255, where the alleged offense consisted in the doing of a single act, the Supreme Court nevertheless sustained the jurisdiction to enjoin the threatened prosecution because of the irreparable injury that would be occasioned thereby. The inquiry in all cases of the type here under consideration is whether or not the attempted enforcement of the invalid statute by criminal proceedings thereunder will work an irreparable injury to the complainant's property. If so, and it further appears that the remedy of eventual acquittal of the criminal charges will be wholly ineffectual to repair the damage, it is manifest that an injunction out of equity is the only remedy available for protection against the unconstitutional encroachment which can in any sense be deemed to be an adequate remedy.

The question, therefore, is whether in the instant case

the facts are such that an attempt to enforce the statute against the complainant by repeated prosecutions for each day's violation thereof would, if the statute is eventually held to be invalid, cause injury to its business of an irreparable character. Now upon that question I would prefer to have the benefit of discussion at the bar or upon briefs. While I have some tentative ideas upon the question, yet before announcing them as conclusions I would like the aid of discussion from the solicitors.

Not only so, but argument upon another point is highly desirable. I refer to the constitutionality of the statute. The bill lays the act before the court with a challenge of its constitutional validity. There it rests. It is hardly to be expected that the court should assume the act to be invalid on its mere denunciation by the complainant. The application for a restraining order will therefore be denied without prejudice to the right of the complainant to renew its motion.

This much I am prepared now to say, *viz.*, that in no event will a restraining order issue against the prosecution of the criminal action which was inaugurated before the pending bill was filed. *Cline v. Frink Dairy Co.*, 274 *U. S.* 445, 47 *S. Ct.* 681, 71 *L. Ed.* 1146; *Campbell v. Chase National Bank*, (*D. C.*) 5 *F. Supp.* 156. Whether a restraint should issue against future prosecutions until the question of the act's constitutionality can be determined, is a question which can be answered with more assurance after the court has had the advantage of argument. So far as I am advised, no additional criminal proceedings have been inaugurated. The Attorney General has complete control over the matter of prosecutions under the act and it may well be that, in view of the important questions of constitutionality which are raised against the act, questions which do not deserve to be dismissed as frivolous, the Attorney General will be content to withhold further prosecutions until these questions are disposed of in the regular course of the criminal case now pending. If he is not so disposed, then the matter

of the pending application may be renewed. For the present, the court answers the sole question which has been debated and holds that, if the act is invalid and the facts are such that its attempted enforcement against the complainant by repeated prosecutions will do irreparable injury to the complainant's business and property, jurisdiction exists in the court to grant the relief which the bill seeks. As to the prosecution now pending, the complainant has ample remedy in the way of defense and, in case he is defeated in the Municipal Court, by appropriate proceedings of review. Nothing is shown at present which discloses the necessity of interference by this court with that proceeding in order to protect the complainant's property rights from irreparable injury.

Order accordingly.