JAMES B. KITNER & another[1] vs. CTW TRANSPORT, INC.

No. 99-P-1061.

Essex. May 16, 2001. - February 13, 2002.

Present: LAURENCE, SMITH, & MASON, JJ.

*Contract,* Misrepresentation, Choice of law clause. *Consumer Protection Act,* Unfair act or practice. *Damages,* Consumer protection case.

A judge in a civil action did not err in choosing to ignore the choice of law provision in a contract, where the language of the contract as to choice of law was self-limiting, in that it did not indicate that the law of another State would apply to tortious conduct or unfair acts inducing a breach of the contract [746], and where the plaintiffs' claim under G. L. c. 93A, which incorporated both the defendant's breach of contract and its misrepresentations, sounded in tort rather than contract, and therefore Massachusetts law applied [746-747].

There was ample evidence to support the factual finding of a judge in a civil action that the defendant committed an unfair trade act in violation of G. L. c. 93A. [747-748]

An award of damages in a civil action brought under G. L. c. 93A was not excessive, where the defendant made only a general allegation that certain expenses should have offset the plaintiffs' award, and where the defendant did not present any specific evidence as to the amount of deductions that it alleged should have been made. [748-749]

In a civil action, there was sufficient evidence to support a finding that the defendant was liable on a claim of negligent misrepresentation, where, at the time the defendant represented to the plaintiffs that it was securing insurance for the plaintiffs, the defendant knew or should have known that its insurance company would not insure the plaintiffs, and the plaintiffs relied on this representation to their detriment. [749-750]

CIVIL ACTION commenced in the Lynn Division of the District Court Department on November 19, 1996.

Upon removal to the Superior Court, the case was tried before *Richard E. Welch, III,* J.

*Harvey Nosowitz* for the defendant.

---

[1] Sandra I. McKinney.

*Louis Movitz* for the plaintiffs.

SMITH, J. In November of 1996, the plaintiffs, James B. Kitner and his wife Sandra I. McKinney, filed a complaint in Lynn District Court seeking damages from the defendant, CTW Transport, Inc. (CTW), for breach of a conditional sales and security contract, misrepresentation, and violation of G. L. c. 93A. On January 27, 1997, the case was removed to Superior Court.

On October 13, 1998, the matter went to trial before a jury on the theories of negligent misrepresentation, intentional misrepresentation, and breach of the contract. After a three-day trial, the jury returned verdicts in favor of CTW on the counts charging breach of contract and intentional misrepresentation but found for the plaintiffs on the count of negligent misrepresentation. The jury awarded damages in the amount of $18,238.

The judge had reserved to himself the plaintiffs' c. 93A claim. The judge ruled that CTW's actions violated c. 93A and awarded $36,500 to the plaintiffs. Subsequently, the judge awarded an additional $20,000 to the plaintiffs in attorney fees and expenses. The judge also ruled that the jury's verdict was duplicative of the c. 93A award because both the negligent misrepresentation and the c. 93A violation produced the same harm. Therefore, he dismissed the jury award and awarded judgment on the plaintiffs' c. 93A claim.

On appeal, CTW claims that the judge committed error when he awarded damages to the plaintiffs pursuant to their c. 93A claim because North Dakota law governed CTW'S conduct and not Massachusetts law. In addition, CTW contends that even if Massachusetts law did apply to the c. 93A claim, the judge's findings did not support a c. 93A violation. CTW also claims that the judge committed error in calculating the plaintiffs' damages and denying the defendant's motion for a directed verdict on the plaintiffs' negligent misrepresentation claim.

*Facts.* We summarize the undisputed facts introduced at trial, supplemented by facts found by the judge on the plaintiffs' c. 93A claim.

In June of 1994, Kitner was hired by CTW as a long-haul

commercial truck driver. CTW is a North Dakota corporation with its corporate headquarters in Fargo, North Dakota. CTW also has a place of business in Peabody, Massachusetts, and Kitner worked out of that terminal. While employed by CTW, the truck that Kitner operated was insured under a CTW policy with John Deere Insurance Company (John Deere). However, after Kitner was employed for three or four months, John Deere advised CTW that it would not continue to insure Kitner's truck because Kitner had a prior conviction for operating a motor vehicle while under the influence of intoxicating liquor.

In order to keep Kitner working for CTW, the plaintiffs and CTW entered into a conditional sales and security contract (contract) on September 1, 1994, whereby CTW agreed to sell to the plaintiffs a 1990 Peterbilt Semi Tractor for $36,200 plus twelve percent interest.[2] Under the contract, the plaintiffs agreed to provide liability insurance for the truck, and also agreed that Kitner would be an independent contractor, not an employee, of CTW. In addition, the plaintiffs agreed to pay for maintenance and repairs on the truck.

Also on September 1, 1994, the plaintiffs obtained a twelve-month liability insurance policy from Canal Insurance Company (Canal). Canal agreed to insure the truck despite being advised of Kitner's prior operating under the influence offense. The plaintiffs made a down payment of $1,314 on the Canal policy. The policy required them to pay nine additional monthly premiums of $710, for insurance coverage through September 2, 1995.

In March of 1995, Canal sent a notice to the plaintiffs (and to CTW as lienholder) that the plaintiffs' insurance policy would be canceled if the current monthly premium was not received within two weeks of the notice. The plaintiffs made the payment within the required period and the policy was not canceled. On May 22, 1995, Canal sent another notice to the plaintiffs, and to CTW, that the policy would be canceled if the current premium was not received by June 6, 1995. The June payment

---

[2]The contract stated that the total purchase price was $29,200. Both parties agreed at trial, however, that the plaintiffs paid $7,000 as a down payment and that the $29,200 figure represented the additional financing amount, for a total purchase price of $36,200.

would have represented payment in full for coverage through September 2, 1995.

In May of 1995, after the plaintiffs received the second notice, Costas Flessas, CTW's president, discussed the matter of the plaintiffs' insurance with Kitner. He informed Kitner that CTW could purchase insurance for the plaintiffs at a smaller monthly premium than what the plaintiffs were paying Canal. It was then agreed between the plaintiffs and CTW that CTW would place the plaintiffs on its insurance policy and the plaintiffs would therefore then allow Canal's insurance policy to lapse.[3] Flessas did not inform the plaintiffs that John Deere was still its insurance carrier, i.e., the same insurer who had previously advised CTW that it would not insure a truck operated by Kitner. As a result of Flessas's representation that he would procure insurance for the truck, the plaintiffs allowed the policy with Canal to lapse.

Once CTW placed the plaintiffs' truck under its policy with John Deere, it attempted to conceal from John Deere that Kitner was the operator of the truck. However, after John Deere requested and received from CTW the identity of Kitner as the truck operator, it informed CTW that, as of July 14, 1995, the policy on the truck would be canceled because it would not insure Kitner as operator because of his past driving record.

On July 14, 1995, Kitner arrived at the Peabody terminal to submit his paperwork on a truck load he had just delivered in Chelsea. Flessas told Kitner that he was repossessing the truck because Kitner had violated the contract in that he had failed to provide insurance for the truck. Flessas fired Kitner without giving him any opportunity to resume his insurance with Canal.

On September 14, 1995, CTW sent a notice of default to the plaintiffs, demanding accelerated payment on the contract within two weeks or CTW would permanently retain the truck. The plaintiffs could not make the payment, and CTW retained the truck. The plaintiffs then brought this action.

---

[3]The savings in regard to the switch of insurance carriers would be substantial to the plaintiffs because CTW's insurance would cost the plaintiffs only $440 a month, in contrast to the $710 per month the plaintiffs were paying Canal. The contract was beneficial to CTW because it kept Kitner as an employee and the insurance premiums would be deducted from Kitner's weekly paycheck.

1. *Choice of law issue as to G. L. c. 93A claim.*[4] The contract between the plaintiffs and CTW contained the following language: "This Agreement is being executed and delivered and is intended to be performed in the State of North Dakota, and the substantive laws of the State of North Dakota shall govern the identity, construction, enforcement, and interpretation of this Agreement . . . unless the laws of another state require such application to this Agreement or parts thereof."

Prior to trial, CTW filed a motion seeking a declaration that North Dakota law should govern the enforcement and interpretation of the contract, including the G. L. c. 93A claim. The plaintiffs responded, requesting a ruling that Massachusetts law applied to the case.

The judge found that "[a]ll the relevant dealings occurred in [Massachusetts] including the execution of the contract, the payments to the plaintiff[s], and the repossession of the truck. The language of the contract is inaccurate in that the contract was not executed or delivered or performed in North Dakota. All reasonable violations regarding the contract and misrepresentations relate to [Massachusetts]." Therefore, the judge ruled that the law of Massachusetts should apply to the matter.

On appeal, CTW claims that both parties agreed below that the contract was governed by G. L. c. 106, § 1-105, which provides in relevant part, "when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." Therefore, CTW argues that the only question before the trial court was whether, at the time of the contract, there was a reasonable basis for the selection of North Dakota law, not whether the lawsuit was reasonably related to Massachusetts.

The plaintiffs respond that the judge did not commit error because the contract at issue and the relevant conduct by and between the parties relate exclusively to Massachusetts.

[4]On appeal, CTW does not raise the choice of law issue as to the negligent misrepresentation count. Further, the jury returned a verdict in favor of CTW on the breach of contract claim, and the plaintiffs did not file a cross-appeal. Thus, the jury's verdict rendered the choice of law issue moot as to that count.

For two reasons, we conclude that the judge did not commit error in choosing to ignore the choice of law provision in the contract. They are (1) the language of the contract and (2) the relevant law as to G. L. c. 93A in regard to CTW's conduct.

a. *The language of the contract.* The language in the contract as to choice of law is expressly self-limiting. It states that North Dakota law would only "govern the identity, construction, enforcement, and interpretation of the" contract. The language does not indicate that North Dakota law would also cover tortious conduct or unfair acts inducing a breach of the contract. Contrast *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 377-379 (1990) (a limitation of liability provision in a sales contract excluding indirect, special, incidental, and consequential damages for breach of warranty was enforceable to bar a claim for breach of warranty under the contract brought pursuant to G. L. c. 93A).

b. *Choice of law provision and G. L. c. 93A.* "An action pursuant to G. L. c. 93A is 'neither wholly tortious nor wholly contractual in nature.' " *Standard Register Co.* v. *Bolton-Emerson, Inc.*, 38 Mass. App. Ct. 545, 548 (1995), quoting from *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975). See *Kattar* v. *Demoulas*, 433 Mass. 1, 12 (2000). "[C]laims of unfair or deceptive acts or practices may be founded on activities that more closely resemble either a traditional breach of contract action, see *Linthicum* v. *Archambault*, 379 Mass. 381, 387 (1979) (breach of warranty), or an action in tort. See *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979) (misrepresentation). See also *Computer Sys. Engr., Inc.* v. *Qantel Corp.*, 571 F. Supp. 1365, 1370 (D. Mass. 1983), aff'd, 740 F.2d 59, 70 (1st Cir. 1984)." *Standard Register Co.* v. *Bolton-Emerson, Inc.*, 38 Mass. App. Ct. at 548.

Therefore, the classification of a c. 93A claim as either a contract or tort action may be dispositive in determining the scope and effect of a choice of law provision in a contract. *Ibid.*, citing *Worldwide Commodities, Inc.* v. *J. Amicone Co.*, 36 Mass. App. Ct. 304, 307-308 (1994). See *Northeast Data Sys. Inc.* v. *McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 610 (1st Cir. 1993); *Computer Sys. Engr., Inc.* v. *Qantel Corp.*, *supra.* Thus, if a particular defendant's unfair conduct with

respect to a contract sounds in tort, c. 93A will apply to that contract notwithstanding a contract provision that states that contractual claims will be interpreted under another State's law. See *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 620-621 (1994) (a limitation of liability provision in a software licensing agreement was not effective to preclude recovery for a claim under G. L. c. 93A, § 11, arising out of intentional misrepresentation, a tort-based theory of recovery).

The plaintiffs' c. 93A claims were not based solely on contract. Rather, the plaintiffs' c. 93A action incorporated both CTW's breach of contract and misrepresentations. In fact, the jury specifically found that CTW had committed negligent misrepresentations, but not breach of contract.

There was ample evidence of CTW's tortious conduct. It induced the plaintiffs to drop their insurance with Canal and sign on with John Deere when, at the time, CTW knew or should have known that John Deere would not accept Kitner as an operator of the truck. The judge ruled that CTW's conduct in terminating the contract and repossessing the truck was "deceptive," especially in view of the lack of notice to the plaintiffs and the failure to give the plaintiffs an opportunity to resume their insurance with Canal. It is undisputed that all of CTW's conduct which was determined by the judge and jury to be tortious — the misrepresentation, termination of the contract, and repossession of the truck — took place in Massachusetts.

We conclude that the plaintiffs' c. 93A claim sounded in tort, and not entirely in contract. Therefore, it was proper to apply Massachusetts law to CTW's conduct.

2. *Finding of G. L. c. 93A violation.* "To be held unfair or deceptive under [G. L.] c. 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness." *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. at 620. Misrepresentation at common law will be a basis for a c. 93A claim. *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. at 504. See *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 235 (1985). A judge's determination that a defendant engaged in an

unfair or deceptive act in violation of c. 93A is a factual finding which must stand unless clearly erroneous. *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 476 (1991). In order to demonstrate that a factual finding is clearly erroneous, CTW must prove that the judge's finding is not supported by "any reasonable view of the evidence, including all rational inferences of which it was susceptible." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 510 (1997), quoting from *T.L. Edwards, Inc.* v. *Fields*, 371 Mass. 895, 896 (1976).

There was evidence that CTW unilaterally terminated its contract with the plaintiffs without any prior notice, on the basis of lack of insurance, a condition for which CTW was held responsible by the judge. At the time that CTW induced the plaintiffs to accept its insurance, the plaintiffs were in substantial compliance with the contract. CTW did not give the plaintiffs any opportunity to reinstate the Canal policy which CTW had induced them to drop in favor of a policy which CTW knew or should have known would not be issued because of Kitner's driving record.

In sum, there was ample evidence to support the judge's factual finding that CTW committed an unfair trade act in violation of c. 93A.

3. *Damages.* CTW claims that the judge's award of damages pursuant to c. 93A relating to Kitner's lost income was excessive, contending that the judge failed to deduct operating expenses from the $21,000 figure which represented two months' income.

In a c. 93A claim, the plaintiff bears the burden of proving entitlement to damages as an element of his claim. *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 48 (1998). While it is true that a plaintiff need not prove damages with mathematical certainty, "damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty." *Lowrie* v. *Castle*, 225 Mass. 37, 51 (1916).

We agree with the trial judge that CTW made only a general allegation that certain expenses should have offset Kittner's gross monthly income and did not present any specific evidence

as to the amount of any deductions that it alleged should have been made.

4. *Sufficiency of the evidence on negligent misrepresentation claim.* CTW argues that the plaintiffs presented insufficient evidence to support the verdict on the claim of negligent misrepresentation.

In reviewing whether the evidence was sufficient to support a jury verdict, the appellate court adopts the view of the evidence most favorable to the plaintiff. *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 841 (1987), cert. denied, 484 U.S. 1066 (1988), citing *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978). The test is "whether anywhere, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the" plaintiff. *Whitehall Co., Ltd.* v. *Barletta*, 404 Mass. 497, 504 (1989), citing *McAvoy* v. *Shufrin*, 401 Mass. 593, 596 (1988).

In this case, the jury found CTW liable only on the plaintiffs' claim of negligent misrepresentation. In order to recover for negligent misrepresentation, a plaintiff must prove that the defendant, in the course of his business, made a false representation of material fact for the purpose of inducing the plaintiff to rely upon it, and that the plaintiff did rely upon the representation as true, to his damage. *Nycal Corp.* v. *KPMP Peat Marwick LLP*, 426 Mass. 491, 496 (1998). *Zimmerman* v. *Kent*, 31 Mass. App. Ct. 72, 77 (1991). Establishing liability for misrepresentation does not require a showing that the defendant even knew that the statements made were false or that the defendant actually intended to deceive the plaintiff. *Zimmerman* v. *Kent*, *supra* at 81-82.

Here, the jury could have found that CTW represented that it was securing insurance for the plaintiffs. CTW knew or should have known when it made that representation to Kitner that John Deere would refuse to insure Kitner. The plaintiffs relied on CTW's representation and allowed their own insurance policy to lapse. As a result, the plaintiffs failed to meet their contractual obligations to provide insurance on the truck, which led to the repossession of the truck by CTW. These facts were

sufficient to support the jury's verdict for the plaintiffs on their claim of negligent misrepresentation. There was no error.

*Judgment affirmed.*